## UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

Electronically filed

**ELIZABETH FUST,**
**DAVID ALLGOOD,**
**MARCUS GRAY, and**
**CENTER FOR ACCESSIBLE LIVING, INC.**
**on behalf of themselves and all others similarly situated,**                    PLAINTIFFS


v.                              CIVIL ACTION NO.   3:20-CV-562-CRS


**FIRST UROLOGY, P.S.C.,**                              DEFENDANT

              *       *       *       *       *       *       *


## INTRODUCTION

1.      On the 30th anniversary of the Americans with Disabilities Act, patients with

disabilities continue to face pervasive discrimination in access to health care, resulting in subpar

medical care and treatment. It is well documented that patients with all types of disabilities

experience significant disparities in the standard of care they receive from health care providers

due to access barriers. This frequently results in patients with disabilities having unmet medical

needs and being at greater risk for secondary conditions, longer-term health problems, and even

death.

2.      This civil rights action challenges the unlawful practice of First Urology, P.S.C.

("First Urology" or "Defendant") of refusing to help patients transfer to examination equipment

and provide related accessible medical equipment, training, and policies at approximately twenty

health care facilities in Kentucky and Indiana. First Urology has operated under a written policy

specifically directing that it will not assist patients with mobility disabilities in transferring from wheelchairs to examination tables or other diagnostic equipment. Rather, First Urology's written policy requires patients with disabilities to bring their own equipment to help facilitate transfers and to bring their own friends, family, or attendants—trained in body mechanics and transfer techniques—to help facilitate transfers as well. In so doing, First Urology discriminates against patients with mobility disabilities, puts the safety of its patients with mobility disabilities at risk, and provides its patients with substandard medical care that is not equal to the service First Urology provides to people without mobility disabilities.

3.     Persons with mobility disabilities are entitled to full and equal access to First Urology's health care services under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act"), and the Kentucky Civil Rights Act ("KCRA").

4.     The ADA requires medical practitioners to provide equal medical services to patients with disabilities using accessible medical equipment. *See, e.g.*, U.S. Department of Justice Civil Rights Division Disability Rights Section & U.S. Department of Health and Human Services Office for Civil Rights, *Americans with Disabilities Act: Access To Medical Care For Individuals With Mobility Disabilities* (2010), available at https://www.ada.gov/medcare_ta.htm (last visited Aug. 10, 2020). Equal medical services include reasonable assistance to enable the patient to receive medical care, including helping the patient to get on and off the examination table or other equipment and to lie back and be positioned on the examination table or other equipment. Such equipment is often height adjustable and/or has padded, adjustable restraints and bars and can include examination beds, stretchers, and tables; procedure and examination chairs; weight scales; radiologic equipment; and lifting and transfer equipment. The available

types of lifting and transfer equipment include transfer boards (a product made of a smooth, rigid material that acts as a supporting bridge on which a patient can slide between a wheelchair and another surface such as an examination table) and overhead or portable patient lifts that raise the patient using a sling. For example, most radiologic equipment requires the patient to lie on a flat surface. Radiologic technology is often integrated into the table, preventing it from being sufficiently lowered; consequently, the use of a patient lift or another transfer and positioning technique is particularly important for access to this equipment.

5.      While some medical examinations (for instance, an examination of the face) can be performed without transferring from a wheelchair to an examination table, many examinations and procedures performed by urologists cannot be performed effectively unless the patient is on an examining or procedure table or other piece of equipment. Such procedures include examinations that involve pressing on the patient's abdomen, rectal examinations, pelvic examinations for females, cystoscopy, CT scans, urodynamics performed on a commode chair, renal ultrasounds, and kidney/ureter/bladder x-rays.

6.      Refusal to examine a patient on examination equipment is a recurring barrier to providing proper and comprehensive care to patients with disabilities. Patients receive less comprehensive and often sub-standard medical evaluation, treatment, procedures, and care compared to patients without disabilities—sometimes amounting to the denial of treatment.

7.      Plaintiff Elizabeth Fust is a paraplegic with a spinal cord injury who uses a wheelchair for mobility. Ms. Fust has ongoing urological care needs and is a patient of First Urology. In 2019, Ms. Fust's First Urology physician prescribed a CT scan, a procedure that conveniently is performed at the same location as her physician's practice, 100 E. Market Street in Louisville, KY ("Market Street location"). However, when Ms. Fust tried to schedule the CT

scan, she was told that First Urology would not assist her with transfer to the CT scanner table due to its "Lifting Policy." Instead, Ms. Fust was forced to have the CT scan at another provider, which was far less convenient, and not with her chosen provider. At the same appointment in 2019, Ms. Fust's First Urology physician also prescribed a renal ultrasound for her follow-up appointment in or about October 2020.  Ms. Fust was also required to schedule the renal ultrasound appointment at another facility. In addition, there are other urological services that Ms. Fust would not be able to receive at First Urology as a result of the "Lifting Policy."

8.      Plaintiff David Allgood is a quadriplegic with a spinal cord injury and uses a wheelchair for mobility. Mr. Allgood has ongoing urological care needs and has been a First Urology patient for many years. Due to First Urology's "Lifting Policy," Mr. Allgood has been forced to bring family members into his First Urology appointments in order to assist with lifting him to a table for his procedures.

9.      Plaintiff Marcus Gray is a quadriplegic with a spinal cord injury and uses a wheelchair for mobility. Mr. Gray has ongoing urological care needs and has been a First Urology patient for a number of years. Due to First Urology's "Lifting Policy," Mr. Gray's spouse has had to assist him in transferring to an examination table at First Urology on approximately two occasions.

10.     By failing to make its services accessible to patients with disabilities, First Urology perpetuates a two-tiered, discriminatory system of health care, whereby people with disabilities are denied care or receive less complete care, which jeopardizes their health and well-being and deprives them of the opportunity to receive certain care, treatment, and imaging services within the same practice as their ongoing and preferred urological care providers.

11.     Maintaining good urological health care is vital for people with spinal cord injuries. Patients with certain disabilities such as spinal cord injuries have a heightened need for urological care; for example, neurogenic bladder occurs in most individuals with a spinal cord injury, urinary tract infections are common, and urological evaluations are generally performed annually for this population.[1] However, this crucial need is exacerbated by (or remains unmet due to) the discriminatory lack of access to critical urological care for people with certain disabilities, placing them at risk of medical complications and death. Patients with other mobility disabilities that affect their ability to transfer for medical examinations are also discriminatorily denied access to care at First Urology.

12.     First Urology's ongoing practice of systemic discrimination denies Plaintiffs and class members of their rights under federal, state, and local statutes, including the "full and equal enjoyment" guarantee of Title III of the ADA and Defendant's obligations under Section 504 and the KCRA.

13.     First Urology has been informed that its "Lifting Policy" violates the ADA, via correspondence from Plaintiff Fust, dated on or about September 16, 2019, and December 6, 2019, and via correspondence from Plaintiff Fust's counsel on or about January 13, 2020.

14.     Eventually, First Urology stated that it has since obtained Hoyer Lifts for two of First Urology's locations; however, even if true, there is no evidence that the Hoyer Lifts are compliant with the Department of Justice or Rehabilitation Act Standards. In addition, a Hoyer

---

[1] *See* Consortium for Spinal Cord Medicine, *Bladder Management for Adults with Spinal Cord Injury: A Clinical Practice Guideline for Health-Care Providers* (Aug. 2006), https://pva-cdnendpoint.azureedge.net/prod/libraries/media/pva/library/publications/cpgbladdermanageme_1 ac7b4.pdf (also noting the goal of maintaining a functional, infection-free genitourinary system by preventing complications in spinal cord injured patients) (last visited August 10, 2020).

Lift alone does not provide full compliance with the prevailing standards, and First Urology's other locations (approximately eighteen) are still completely non-compliant.

15.     By letter dated on or about February 19, 2020, Plaintiff Fust's Counsel provided notice to the Kentucky Commission on Human Rights of the unlawful practices set forth in this complaint.

## JURISDICTION

16.     This is an action for injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, *et seq.*; and the Kentucky Civil Rights Act, KRS 344.010, *et seq.* This Court has subject matter jurisdiction over the Rehabilitation Act and ADA claims pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the KCRA claims pursuant to 28 U.S.C. § 1367. This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

17.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District. All parties are located within this District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

### A.  Plaintiffs

i.     Individual Plaintiffs

18.     Plaintiff Elizabeth Fust resides in Louisville, Kentucky. She has used a wheelchair for mobility since becoming a T7 paraplegic in 2006 due to a spinal cord injury. Ms. Fust is a person with a disability as defined in the KCRA and the ADA. Ms. Fust is currently a patient of First Urology at its Market Street location in Louisville, Kentucky.

19.      Plaintiff David Allgood resides in Louisville, Kentucky. He is a quadriplegic and uses a wheelchair for mobility due to a spinal cord injury. Mr. Allgood is currently a patient of First Urology at its location in Jeffersonville, Indiana.

20.      Plaintiff Marcus Gray lives part time in Madison, Indiana. He is a quadriplegic and uses a wheelchair for mobility due to a spinal cord injury. Mr. Gray is currently a patient of First Urology at its location in Jeffersonville, Indiana.

ii.      <u>Organizational Plaintiff</u>

21.      Center for Accessible Living, Inc. ("CAL"), a non-profit organization established in 1981, has locations in Louisville, Murray, and Bowling Green, Kentucky. It communicates with, assists, supports, and advocates for people with disabilities throughout Kentucky. CAL helped approximately 3,100 constituents in 2018. CAL's mission is to empower people with disabilities to achieve their goal of attaining independent living and to increase their ability to function independently within their community. It engages in regular advocacy, training, education, and outreach efforts to further this goal. CAL offers many services to community members with disabilities, including peer support, employment, independent living skills training, information and referral resources, and transition assistance.

**B.  <u>Defendant</u>**

22.      Defendant First Urology, P.S.C. is a privately owned medical practice, doing business in Kentucky and Indiana. First Urology operates approximately thirteen locations in Kentucky and approximately seven locations in Indiana. At all times material hereto, First Urology has operated a urological medical practice doing business in Kentucky and Indiana, with medical offices and facilities that are places of public accommodations as defined in the ADA and the KCRA. First Urology receives federal financial assistance per Section 504.

7

## GENERAL FACTUAL ALLEGATIONS

23.     First Urology's website states that it is the "largest privately owned medical practice in the state of Kentucky" and the "largest urologic provider in the greater Louisville and southern Indiana area." Per its website, First Urology treats women, men, and children. Its specialty services include an Advanced Therapy Center, Continence Center, Pathology Department, and Research Department. Its website proclaims that "First Urology is dedicated to incorporating state-of-the-art technology to aid in patient diagnosis, treatment and comfort."[2]

24.     First Urology's "Lifting Policy," a copy of which First Urology provided to Plaintiff Fust, attached hereto as Exhibit A, states:

> Patients who require assistance with transfers from a wheelchair to a commode chair or an examination table must comply with the following guidelines:
>
> - If the patient is non-weight bearing and requires total assistance, either a family member or staff members from the facility where the patient is currently residing must accompany the patient and carry-out the lifting of the patient.
> - The above requirement is for safety of the patient so that individuals familiar with the patient's lifting requirements are present to assist with and supervise the movement on the patient.
> - If the patient requires partial assistance with mobility, someone must be present to assist staff with the movement of the patient.
> - When the patient is scheduled for procedures, the patient must be informed that they must bring any assistive devices necessary for ambulation. This would include gait belts, transfer boards, walkers, and canes.
> - Patients exceeding a 300 lb weight limit will require special attention, as the commode chairs used for voiding during urodynamics has a 300 lb weight limit and the examination table used to CT Sean's & X-rays have a 300 lb weight limit as well. Certainly if the patient is ambulatory, we will accommodate the patient to the best of our ability, but if they are not mobile we will be unable to test them.
>
> These guidelines are developed to provide for the safety of patients as we would never want to injure a patient when attempting to move them. It is very important that individuals trained in appropriate body mechanics and transfer techniques be

---

[2]  *See* https://1sturology.com/about/administration/; https://1sturology.com/about/; https://1sturology.com/services/ (respectively; last visited August 10, 2020).

the ones to assist these patients. These guidelines also provide for the safety of our staff, as an injury acquired when attempting to move a patient can prove both painful and costly. *This policy was developed to provide for the utmost safety of patients and staff members* [emphasis in original].

25.      Requiring a patient with a disability to bring a friend, family member, or other person, or related medical equipment, to their private medical appointment to provide transfer assistance is discriminatory, demeaning, inconvenient, and unlawful.

## PLAINTIFFS' ALLEGATIONS AND HARM

*Elizabeth Fust*

26.      Plaintiff Elizabeth Fust resides in Louisville, Kentucky. Plaintiff has used a wheelchair for mobility since becoming a T7 paraplegic in 2006 due to a spinal cord injury.

27.      At all relevant times, Ms. Fust has been a patient seeking and receiving services from First Urology. Ms. Fust selected First Urology as her urological provider due to its reputation for providing high quality care, and the convenience of the Market Street location in Louisville, Kentucky. Ms. Fust specifically selected her physician at First Urology due to his reputation and uncommon expertise in performing a highly specialized and complicated urological surgery that Ms. Fust had undergone and that requires ongoing care and potential revision.

28.      In or about September 2019, Ms. Fust had an appointment with a urologist at First Urology's Market Street location. At that appointment, her First Urology physician prescribed a CT scan to schedule immediately, which her physician advised could be performed by First Urology at the Market Street location—the same location where Ms. Fust's physician practices, and the location most convenient for her. At the same appointment, Ms. Fust's First Urology physician also prescribed a renal ultrasound to schedule for about one year in the future.

9

29.     At that same appointment, after meeting with her physician, Ms. Fust spoke with a First Urology staff representative ("scheduler") to schedule the CT scan at the Market Street location, in addition to the future renal ultrasound at the same location. Ms. Fust observed the CT scanner at the Market Street location that same day. In order to schedule the appointments, the scheduler asked Ms. Fust if she was a "full lift" or if she could transfer herself to the CT scanner table. After Ms. Fust answered that she would need assistance to transfer from her wheelchair to the CT scanner table, the scheduler showed her a "Lifting Policy" issued by First Urology and told Ms. Fust that, pursuant to that policy, First Urology does not assist patients with transfer. The scheduler advised Ms. Fust that she would instead have to go to a non-First Urology provider to receive a CT scan and renal ultrasound.

30.     As a result, Ms. Fust had to schedule and then travel to a hospital outpatient facility for the CT scan, which caused inconvenience, including travel time, a long waiting time at the hospital, and having to obtain a compact disc of the CT scan to review with her First Urology physician at a separate appointment. In addition, Ms. Fust was unable to schedule her renal ultrasound at First Urology, but instead will have to travel to a hospital outpatient facility for the renal ultrasound, which is currently scheduled in or about September 2020, and then have a separate appointment with her First Urology physician to discuss the results (currently scheduled for one week after the renal ultrasound). Due to First Urology's "Lifting Policy," Ms. Fust will again be inconvenienced and will have to spend extra time traveling to and waiting at the hospital outpatient facility to have the renal ultrasound performed, instead of being able to schedule the ultrasound at First Urology, to occur contiguously with her follow-up physician appointment.

10

31.     Ms. Fust would have elected to have the CT scan and renal ultrasound done at First Urology, and if she were a person without a disability, First Urology would have performed the scan and ultrasound on Ms. Fust. Instead, First Urology invoked its discriminatory "Lifting Policy," which was humiliating to Ms. Fust, made her feel unworthy of equal treatment, and caused her inconvenience.

32.     Later in 2019, an employee of First Urology informed Ms. Fust by telephone that the "Lifting Policy" that was in effect in the Market Street location was in effect at all of First Urology's offices, and that if Ms. Fust wanted to make an appointment she would have to bring someone with her to assist her transfer.

33.     Plaintiff Fust has an upcoming appointment with her First Urology physician in or about October 2020. She would have also scheduled her upcoming renal ultrasound at First Urology if it were not for the "Lifting Policy" and has an interest and intent in remaining an ongoing patient of First Urology in the future.

***David Allgood***

34.     Plaintiff David Allgood resides in Louisville, Kentucky. Mr. Allgood has a spinal cord injury resulting in quadriplegia and uses a wheelchair for mobility.

35.     Mr. Allgood needs ongoing urological care and has been a First Urology patient for at least approximately fifteen years. Mr. Allgood is currently a patient at First Urology's location in Jeffersonville, Indiana.

36.     Mr. Allgood selected First Urology due to the quality of urological care that it offers, the comfort of its facilities, and the convenience of the Jeffersonville, Indiana location. Mr. Allgood intends to continue to receive health care from First Urology in the future. Mr. Allgood was advised by a First Urology representative that First Urology will not provide help

with transferring him from his wheelchair to a table for his procedure. As a result, Mr. Allgood has been forced to bring family members to some of his First Urology appointments to assist with lifting him to a table, which is inconvenient for both Mr. Allgood and his family members, limits his ability to schedule appointments to times when they are available, and violates his privacy.

**Marcus Gray**

37.     Plaintiff Marcus Gray lives part time in Madison, Indiana. Mr. Gray is a quadriplegic and uses a wheelchair for mobility due to a spinal cord injury.

38.     Mr. Gray needs ongoing urological care and has been a patient of First Urology for approximately five years. Mr. Gray is currently a patient at First Urology's location in Jeffersonville, Indiana.

39.     Mr. Gray selected the First Urology location in Jeffersonville, Indiana due to the quality of care offered. Mr. Gray intends to continue to receive health care from First Urology in the future.

40.     Mr. Gray has required transfer to an examination table during approximately two of his visits at First Urology. Both times, Mr. Gray's spouse assisted Mr. Gray in transferring to the examination table.

**Organizational Plaintiff**

41.     Organizational Plaintiff Center for Accessible Living, Inc. ("CAL") has constituents who have been harmed by First Urology's discriminatory "Lifting Policy" and by its practices. Individual Plaintiff David Allgood has worked at CAL for approximately twenty-two years and is a consumer of CAL. Individual Plaintiff Elizabeth Fust is a consumer of CAL.

42.     CAL, a statutorily-defined Center for Independent Living, is subject to the control of its consumers, who by definition are individuals with disabilities. Its consumers control all aspects of CAL, including decision making, service delivery, management, administration, and establishment of policy and direction. CAL's Board of Directors, which establishes policy and direction for CAL, is composed of members from the local community, the majority of whom are people with disabilities. In addition, all of CAL's peer counselors and a majority of its management level staff, direct service staff, and overall staff members are people with disabilities.

***Allegations common to all Plaintiffs***

43.     First Urology's discriminatory actions as described herein hinder the ability of Plaintiffs and class members to select and obtain safe, quality medical care because of their disability. Plaintiffs and class members have an equal right to choose their medical providers and locations and to receive treatment as quickly and conveniently as First Urology's patients without disabilities, including without being forced to bring their own medical transfer equipment and people to assist with transfers. Plaintiffs and class members deserve to receive health care at the same high diagnostic and professional standards as anyone else and to be treated with respect. Instead, because of their disabilities, Plaintiffs and class members are forced to obtain medical care from providers other than First Urology that may not be their first choice, and that may be lower quality, less convenient, and offer less expansive urological treatment options. Moreover, Plaintiffs and class members may be required to bring their own equipment, which First Urology should rightfully provide, may have to inconvenience their friends and family by requiring them to attend and assist at appointments, or may be effectively forced to forego care because of First Urology's exclusionary practices.

44.     First Urology's "Lifting Policy" forecloses patients with disabilities from accessible and proper care and treatment, making such patients with an already heightened need for urological care even more vulnerable to risk for secondary conditions, longer-term health problems, and even death.

45.     Plaintiffs and class members should not be forced to bring someone to their appointments "trained in appropriate body mechanics and transfer techniques" or otherwise forego treatment and care at First Urology.

46.     Plaintiffs and class members would seek future medical care and treatment at First Urology's facilities if they were accessible, provided accommodations for their disability, including accessible medical equipment, and provided for procedures and training appropriate to the provision of medical care for patients with disabilities.

## CLASS ALLEGATIONS

47.     Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action for declaratory and injunctive relief purposes only, on their own behalf and on behalf of all persons similarly situated.

48.     The class that Plaintiffs seek to represent consists of:

All persons with disabilities who, because of the "Lifting Policy," are unable to receive equal medical care from First Urology, were forced to bring assistants in order to receive medical care from First Urology, or were denied medical care by First Urology.

49.     The persons in the class are so numerous that joinder of all such persons is impracticable. The disposition of their claims in a class action is a benefit to the parties and to the Court. According to the U.S. Census Bureau American Community Survey, there were an estimated 74,000 people in the Louisville, KY–Jefferson County, IN Urbanized Area with an

"ambulatory difficulty" in 2018.[3] It can be assumed that some significant percentage of persons in this group needs assistance transferring and will seek urology services at First Urology in the coming year.

50.     First Urology's website states that it is the "largest privately owned medical practice in the state of Kentucky" and the "largest urologic provider in the greater Louisville and southern Indiana area."[4] In fact, First Urology houses approximately half the urology practices in the urbanized Louisville, Kentucky area.

51.     Proposed class members share a well-defined community of interest with respect to the questions of law and fact involved because they are all being excluded from First Urology's services as a result of their need to transfer, or are forced to bring people and/or equipment to their First Urology appointments to help them transfer. In particular, although the class includes many patients with disabilities other than spinal cord injuries, spinal cord injured patients have a pronounced need for ongoing urological care.[5]

52.     There are questions of law and fact common to all the class members that include, but are not limited to:

(1)     Whether First Urology has violated federal and state law by discriminating against class members on the basis of their disability.

---

[3] *See* https://data.census.gov/cedsci/table?q=S18&d=ACS%201-Year%20Estimates%20Subject%20Tables&g=400C100US51755&tid=ACSST1Y2018.S1810&hidePreview=true (last visited August 10, 2020).

[4] *See* https://1sturology.com/about/administration/ (last visited August 10, 2020).

[5] For example, *see* Persu, et al., *Urological Management of the Patient with Traumatic Spinal Cord Injury*, Journal of Medicine and Life (Jul-Sept. 2009) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5052502/ (last visited August 10, 2020).

(2)     Whether First Urology's "Lifting Policy" violates anti-discrimination laws, including the ADA, Section 504, and the KCRA.

(3)     Whether First Urology has failed to purchase and provide accessible medical equipment in accordance with Department of Justice and Rehabilitation Act Standards.

(4)     Whether First Urology's failure to provide medical equipment that is accessible to individuals with disabilities excludes, denies, or otherwise causes such individuals to be treated differently, and as a result deprives individuals with disabilities full and equal enjoyment of First Urology's health care services.

(5)     Whether First Urology should institute policies, procedures, and training appropriate to the provision of medical care for patients with mobility disabilities.

(6)     Whether First Urology has denied class members "meaningful access" to its programs or activities in violation of the ADA and the Rehabilitation Act.

53.     The common questions raised by class members are capable of class-wide resolution. Claims substantially similar to the claims raised here have been resolved in court-approved class action settlements against other health care providers and hospitals, including through enforcement actions brought by the Department of Justice.

54.     The Individual Plaintiffs' claims are typical of the claims of the class as a whole because they arise from the same "Lifting Policy" and course of conduct by First Urology. Organizational Plaintiff CAL represents its constituents who have been harmed by First Urology's discriminatory "Lifting Policy" and by its practices. Each of the Individual Plaintiffs and proposed class members needs assistance to transfer and is therefore similarly affected by First Urology's discrimination. For example, Plaintiff Elizabeth Fust was explicitly denied a CT scan procedure and a renal ultrasound at First Urology due to her inability to lift herself to an

examination table, Plaintiff David Allgood had to bring family members with him to help him transfer, and Plaintiff Marcus Gray relied on his spouse to transfer him to an examination table. First Urology has acted and continues to act on grounds generally applicable to the class as a whole, thereby making declaratory and injunctive relief appropriate to the class as a whole. The form and scope of the injunctive and declaratory relief sought is common to all members of the class.

55.     Plaintiffs are adequate class representatives because they are directly impacted by First Urology's failure to provide full and equal access to their facilities, services, and programs. The interests of the named Plaintiffs are neither antagonistic to, nor in conflict with, the interests of the class as a whole. The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions for declaratory and injunctive relief.

56.     References to Plaintiffs shall include Plaintiffs and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION
### Violation of the Americans with Disabilities Act

57.     Plaintiffs reallege all previously alleged paragraphs of this Complaint.

58.     Title III of the Americans with Disabilities Act prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

59.     The named Plaintiffs, members of the organizational Plaintiff, and the class members (collectively "Plaintiffs") are persons with mobility disabilities who use wheelchairs.

17

They are persons with disabilities within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36. They have an impairment that substantially limits the major life activities of walking, standing, and/or bending. 42 U.S.C. § 12102; 28 C.F.R. § 36.105.

60.     First Urology's facilities are the professional offices of health care providers and therefore are places of public accommodation within the meaning of the ADA. 42 U.S.C. § 12181(7)(F) ("Public accommodation" includes a "professional office of a health care provider, hospital, or other service establishment").

61.     First Urology is the owner, operator, lessor, and/or lessee of the medical services provided in its name and therefore has places of public accommodation within the meaning of the ADA. 28 C.F.R. § 36.104 ("Public accommodation means a private entity that owns, leases (or leases to), or operates a place of public accommodation.").

62.     First Urology has discriminated against Plaintiffs by denying them the opportunity "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of the facilities owned, operated, or contracted for usage by First Urology. 42 U.S.C. § 12182(b)(1)(A)(i).

63.     First Urology has discriminated against Plaintiffs by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated, or contracted for usage by First Urology in a manner that is equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

64.     First Urology has discriminated and continues to discriminate against Plaintiffs by failing to modify its policies, procedures, and practices in a reasonable manner, when such

modifications are necessary to ensure equal access for individuals with physical disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

65.     First Urology's conduct constitutes ongoing and continuous violations of the ADA. Unless restrained or enjoined from doing so, First Urology will continue to violate the law. Through its conduct, First Urology has caused and will continue to cause Plaintiffs immediate and irreparable injury.

66.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. §§ 12188(a)(1) (citing 42 U.S.C. §§ 2000a-3(a)); 12205.

### SECOND CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act

67.     Plaintiffs reallege all previously alleged paragraphs of this Complaint.

68.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

69.     The named Plaintiffs, members of the organizational Plaintiff, and the class members are otherwise qualified individuals with disabilities, pursuant to 29 U.S.C. § 705(20) and 42 U.S.C. § 12102.

70.     Section 504 defines "program or activity" in part as "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii). First Urology is a "program or activity" within the meaning of the Rehabilitation Act.

19

71.     First Urology has received federal financial assistance at all relevant times.

72.     Through the acts and omissions alleged herein, First Urology has, solely because of Plaintiffs' and the class members' disabilities, excluded Plaintiffs from participation in First Urology's programs and activities, denied Plaintiffs the benefits of First Urology's programs and activities, and subjected Plaintiffs to discrimination in violation of 29 U.S.C. §§ 794, *et. seq.*, and the regulations promulgated thereunder.

73.     First Urology's acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder and have resulted in injury to Plaintiffs.

74.     As a proximate result of First Urology's violations of Section 504, Plaintiffs have been injured, and will continue to be injured, as set forth herein. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

75.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees, expenses, and costs, pursuant to 29 U.S.C § 794a, citing 42 U.S.C. §§ 2000d, *et seq.* and 42 USCA § 2000e-5.

**THIRD CAUSE OF ACTION**
**Violation of the Kentucky Civil Rights Act**

76.     Plaintiffs reallege all previously alleged paragraphs of this Complaint.

77.     The Kentucky Civil Rights Act provides that "discrimination" includes "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons, or the aiding, abetting, inciting, coercing, or compelling thereof made unlawful under this chapter." KRS 344.010(5).

78.     Under the KCRA, "disability" includes "[a] physical . . . impairment that substantially limits one (1) or more of the major life activities of the individual." KRS 344.010(4)(a). Plaintiffs are persons with a disability within the meaning of the KCRA.

79.     The term "place of public accommodation" as defined in the KCRA includes "any place, . . . or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public or which is supported directly or indirectly by government funds." KRS 344.130. First Urology is a "place of public accommodation" within the meaning of the KCRA.

80.     By the conduct described above, First Urology has discriminated against the named Plaintiffs, members of the organizational Plaintiff, and the class members in violation of the KCRA.

81.     First Urology's conduct constitutes an ongoing and continuous violation of the KCRA and, unless restrained from doing so, First Urology will continue to violate said law. This conduct, unless enjoined, will continue to inflict injuries, and Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied the accommodations, advantages, facilities, or privileges of the programs and services provided by First Urology as well as reasonable accommodations that would provide them the opportunity to benefit from these programs and services.

82.     First Urology's discriminatory conduct is ongoing, and consequently, Plaintiffs are entitled to injunctive relief and attorneys' fees and costs, pursuant to KRS 344.450.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

83.     Order and judgment of this Court holding that Defendant's conduct, acts, omissions, policies, and practices as alleged herein are unlawful, have violated and continue to violate Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Kentucky Civil Rights Act;

84.     Order and judgment of this Court permanently enjoining Defendant from violating Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Kentucky Civil Rights Act;

85.     Order and judgment of this Court permanently enjoining Defendant to purchase and provide accessible medical equipment as described in the Department of Justice technical assistance guide *Americans with Disabilities Act: Access To Medical Care For Individuals With Mobility Disabilities* (2010), available at https://www.ada.gov/medcare_ta.htm and the Architectural and Transportation Barriers Compliance Board standards setting forth minimal technical criteria for medical diagnostic equipment, *see* Appendix to 36 CFR Part 1195, available at https://www.access-board.gov/guidelines-and-standards/health-care/about-this-rulemaking (last visited August 10, 2020) in all its facilities;

86.     Order and judgment of this Court permanently enjoining Defendant to institute policies, procedures, and training appropriate to the provision of medical care to patients with mobility disabilities;

87.      Costs expended herein, including an award of Plaintiffs' reasonable attorneys' fees and costs; and

88.     All other relief to which the Plaintiffs may be entitled.

Dated:  August 12, 2020             Respectfully submitted,
        Louisville, Kentucky


_s/David Leightty_____
David Leightty
PRIDDY, CUTLER, NAAKE & MEADE, PLLC
2303 River Road, Suite 300
Louisville, KY 40206
Tel.:  (502) 632-5292
dleightty@earthlink.net

Rebecca Sobie*
Christina Brandt-Young*
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel:  (212) 644-8644
Fax:  (212) 644-8636
rsobie@dralegal.org
cbrandt-young@dralegal.org

*Attorneys for Plaintiffs*

*Motion to Appear *Pro Hac Vice* To Be Filed